IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SUSAN HENNING, | ) | Case No. 3:20-cv-188 |
| | ) | |
| Plaintiff, | ) | JUDGE KIM R. GIBSON |
| | ) | |
| v. | ) | |
| | ) | |
| KILOLO KIJAKAZI, | ) | |
| | ) | |
| Defendant. | ) | |

<u>MEMORANDUM OPINION</u>

Title II of the Social Security Act entitles insured persons with disabilities to receive disability insurance benefits ("DIB"). *See* 42 U.S.C. § 423. The present action stems from Administrative Law Judge John A. Fraser's ("the ALJ") denial of an application for DIB by plaintiff Susan Henning ("Ms. Henning"), (ECF No. 18-2 at 12–21), which Ms. Henning has appealed to this Court. (ECF No. 1). Ms. Henning has moved for summary judgment on this appeal, seeking reversal of her application's denial. (ECF No. 31). The Acting Commissioner of the Social Security Administration ("SSA"), Kilolo Kijakazi ("Commissioner"), opposes Ms. Henning's appeal on behalf of the SSA and has also moved for summary judgment. (ECF No. 33).[1] Reviewing the ALJ's decision under 42 U.S.C. § 405(g), the Court **AFFIRMS** that decision, **DENIES** Ms. Henning's motion for summary judgment, and **GRANTS** the Commissioner's motion for summary judgment.

I.     BACKGROUND

---

[1] The ALJ denied Ms. Henning's DIB application on behalf of the Commissioner, but the Commissioner is also a party seeking to defend the ALJ's (and her own) denial of Ms. Henning's application on behalf of the SSA. The Court will attempt to minimize any confusion stemming from the Commissioner's dual role by identifying the ALJ as the adjudicator whose findings the Court is currently reviewing, and the Commissioner as the litigant who is defending those findings on appeal.

On August 3, 2018, Ms. Henning applied for DIB under Title II of the Social Security Act, claiming a disability onset date of August 26, 2006.  (ECF No. 18-5 at 4–13).  On October 16, 2018, an SSA Disability Examiner found that Ms. Henning was not disabled and denied her application.  (ECF No. 18-3 at 14).   On December 18, 2018, Ms. Henning submitted a Disability Appeal, requesting a hearing before an Administrative Law Judge.  (ECF No. 18-4 at 9).  On February 6, 2020, the ALJ held a hearing on Ms. Henning's appeal.  (ECF No. 18-2 at 41–86).  On March 2, 2020, the ALJ issued a decision finding that Ms. Henning was not disabled.  (*Id.* at 12–21).  On March 31, 2020, Ms. Henning submitted a request for review of the ALJ's decision by the SSA Appeals Council.  (ECF No. 18-4 at 48–50).  The Appeals Council denied this request for review on July 15, 2020.  (ECF No. 18-2 at 2–8).

On September 18, 2020, Ms. Henning filed a complaint with this Court, appealing the ALJ's denial of her DIB application under 42 U.S.C. § 405(g).  (ECF No. 3).  Both parties have filed motions for summary judgment and supporting briefs.  (ECF Nos. 31–34).  The parties agree that this case turns on a single question: whether substantial evidence supports the ALJ's finding that Ms. Henning failed to meet her burden of showing that her impairments were per se disabling.  (ECF No. 32 at 7; ECF No. 34 at 3).

II.    **LEGAL STANDARD**

When reviewing an ALJ's denial of DIB, the Court must base its review on the record of the administrative proceedings and the pleadings of the parties.  42 U.S.C. § 405(g).  The Court's review of legal issues is plenary, but its review of factual findings is limited.  *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999).  The Court must determine whether the ALJ applied the proper legal standards in making his decision, and whether the record contains substantial

evidence supporting the ALJ's factual findings.  *See Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001).

With respect to the Court's review of legal issues, the Court must "review the ALJ's application of the law de novo."  *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91 (3d Cir. 2007).  The proper legal standard for assessing disability is a five-step sequential evaluation process that considers whether a claimant: (1) is working, (2) has a severe impairment, (3) has an impairment that meets or medically equals the requirements of an impairment listed in the regulations and is considered per se disabling, (4) can return to his past relevant work, and (5) if not, whether he can perform other work.  *See* 20 C.F.R. § 404.1520(a)(4).  *See also Zirnsak v. Colvin*, 777 F.3d 607, 611–12 (3d Cir. 2014).

With respect to the Court's review of factual findings, the claimant must show at Steps One through Four that the ALJ's decision was not based on "substantial evidence."  42 U.S.C. § 405(g); *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005).[2]  "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted); *Jesurum v. Sec'y of the U.S. Dep't of Health & Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995).  This evidentiary burden is more than a mere scintilla but less than a preponderance of the evidence.  *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988).  If the ALJ's factual findings were reached according to the correct legal standards and are supported by substantial evidence, the Court is bound by them, "even if [it] would have decided the factual inquiry differently."  *Fargnoli*, 247 F.3d at 38.

---

[2] The burden of proof shifts to the Commissioner at Step Five.  *Hess v. Comm'r of Soc. Sec.*, 931 F.3d 198, 201 (3d Cir. 2019).

III.    **DISCUSSION**

As noted, the sole dispute between the parties is whether the ALJ's finding at Step Three of his disability analysis that none of Ms. Henning's disabilities were per se disabling is supported by substantial evidence. An ALJ considers at Step Three the "medical severity" of a claimant's impairments by assessing whether those impairments meet or equal the requirements of an impairment listed under 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Appendix 1"). 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant's impairments meet or equal the requirements of a listed impairment, "then [the claimant] is *per se* disabled and no further analysis is necessary." *Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999) (italics original). The claimant "bears the burden of presenting 'medical findings equivalent in severity to *all* the criteria for the one most similar impairment.'" *Lent v. Berryhill*, No. 3:18-CV-1533, 2019 WL 1896547, at *1 (M.D. Pa. Apr. 29, 2019) (citing *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990)) (emphasis original); 20 C.F.R. § 416.920(d).

Having reviewed the relevant materials—i.e., the evidentiary record, the ALJ's decision, the parties' motions for summary judgment, and their briefs in support thereof—the Court finds substantial evidence supporting the ALJ's factual findings at Step Three. The ALJ found that the severity of Ms. Henning's mental impairments did not meet or medically equal the "paragraph B" criteria of listings 12.04, 12.06, 12.08, and 12.15. (ECF No. 18-2 at 15). To satisfy the paragraph B criteria, the mental impairments must result in one "extreme" limitation or two "marked" limitations in a broad area of functioning. Appendix 1. An extreme limitation is the inability to function independently, appropriately, or effectively, and on a sustained basis; a marked limitation is a seriously limited ability to do so. *Id.*

Ms. Henning argues that the evidence that the ALJ cites as the basis for his factual finding at Step Three "is not substantial evidence, particularly as it is in conflict with the medical evidence of [her] mental impairments."  (ECF No. 32 at 9).  She largely bases this argument on the assessment of Deanna Rezk, CRNP (Certified Registered Nurse Practitioner), who was Ms. Henning's former treatment provider at the Community Guidance Center.  (*Id.* at 11–13).  In this assessment, Nurse Rezk opined that Ms. Henning has extreme limitations in virtually every work-related capacity.  (ECF No. 18-10 at 92–93).  The ALJ found that this assessment was "not persuasive as [it is] not supported and consistent with the overall evidence of record."  (ECF No. 18-2 at 19) (citing ECF Nos. 18-6 at 28–45, 18-8 at 92–93, 18-10 at 92–94).  He elaborated:

> The extreme limitations opined by [this source are] inconsistent with the claimant's treatment history and mental status examination findings.  For example, the record showed improvement in the claimant's symptoms with medication.  The claimant testified that she sees a nurse practitioner at Nulton for medication management but no longer sees a therapist.  She has had no inpatient psychiatric hospitalizations.

(*Id.*) (citing ECF Nos. 18-9 at 10–26, 18-10 at 2–91).

Indeed, the documents relied upon by the ALJ indicate that Ms. Henning's impairments, while existent, do not necessarily have the intensity and persistence that Nurse Rezk's assessment suggests.  Ms. Henning offered responses to a certain questionnaire that evidence a capacity to handle basic responsibilities reliably and independently.  (*See* ECF No. 18-6 at 29–34, 38–39).  Specifically, Ms. Henning reported the following capacities: she can clean herself, do laundry, prepare meals, and perform other household tasks.  (*Id.* at 30–31).  She feeds and cleans after her pet animals.  (*Id.* at 30).  She can perform minor repairs around her home and does some lawn mowing.  (*Id.* at 31).  She regularly goes grocery shopping and is able to pay bills, count change,

handle a savings account, and use a checkbook. (*Id.* at 32). Ms. Henning can also follow spoken instructions with a "medium" degree of success, and she can follow written instructions "pretty well" when the instructions relate to matters of interest. (*Id.* at 34). Elsewhere, she "reported babysitting and enjoying [that] work 'for the most part[.]'" (ECF No. 18-10 at 69).

Additionally, treatment records from the Nulton Diagnostic & Treatment Center ("Nulton") indicate that Ms. Henning's mental health improved in response to medication. (*See* ECF No. 18-10 at 83) (Ms. Henning "knows she is better on [medication]"); (*id.*) (reporting that "medication is working" but "just not enough"). Her medication noticeably reduced the feelings of irritability and aggression that Ms. Henning identifies as the greatest obstacles to her employability. (*See id.* at 69) (reporting "feeling more 'calm' and not so angry all the time" after going on medication). Indeed, throughout her treatment with Nulton in 2019, Ms. Henning was consistently described by her treatment providers as attentive, friendly, and cooperative. (*See id.* at 8, 21, 30, 60, 70, 75, 85).

The thrust of Ms. Henning's argument is that the evidence detailed above is *non-medical* and therefore cannot serve as independent bases for the ALJ to discount the *medical* evidence that is Nurse Rezk's assessment. (*See* ECF No. 32 at 15). However, the distinction between medical and non-medical evidence is irrelevant here. When the opinions of nurse practitioners are offered to show "the severity of [an] impairment[] and how it affects [a claimant's] ability to work[,]" 20 C.F.R. § 404.1513(d), an ALJ must evaluate such evidence by considering, inter alia, how consistent the evidence is "with the record as a whole[,]" *id.* § 404.1527(c)(4), as well as "any factors . . . which tend to support or contradict the medical opinion." *Id.* § 404.1527(c)(6). The evidence that ALJs can consider when reviewing these factors includes non-medical evidence.

*See, e.g., Durden v. Colvin*, 191 F. Supp. 3d 429, 457 (M.D. Pa. 2016) (noting that "non-medical evidence is an acceptable reason to assign less weight" to a medical opinion).

The ALJ cited to both the Nulton records and Ms. Henning's function report as explanations for his decision to discount Nurse Rezk's assessment. (*See* ECF No. 18-2 at 19). This evidence was part of "the record as a whole" and contradicted the extreme severity that Nurse Rezk ascribed to Ms. Henning's impairments. 20 C.F.R. § 404.1527(c). Even assuming that this evidence is non-medical in the relevant sense, it can nonetheless support an ALJ's decision to discount a nurse practitioner's opinion regarding the severity of a claimant's impairments, as well as her opinion regarding the claimant's ability to work. *See Rickabaugh v. Berryhill*, 271 F. Supp. 3d 721, 736 (D. Del. 2017) (finding "substantial evidence support[ing] the ALJ's determination to give little weight" to a nurse practitioner's opinion).

The Court is satisfied that the evidence cited by the ALJ would allow "a reasonable mind [to] accept [it] as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. Specifically, this evidence is adequate to support the ALJ's conclusion that Ms. Henning "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in [Appendix 1,]" (ECF No. 18-2 at 15), because a reasonable mind could accept it as adequate to support the conclusion that Ms. Henning has at least a moderate ability to "function independently, appropriately, or effectively, and on a sustained basis[.]" Appendix 1. The Court finds that the ALJ's factual findings at Step Three were supported by substantial evidence, and it accordingly grants the Commissioner's motion for summary judgment.

An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SUSAN HENNING, | ) | Case No. 3:20-cv-188 |
| | ) | |
| Plaintiff, | ) | JUDGE KIM R. GIBSON |
| | ) | |
| v. | ) | |
| | ) | |
| KILOLO KIJAKAZI, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

**AND NOW**, this 31st day of August, 2023, upon consideration of plaintiff Susan Henning's request for judicial review pursuant to 42 U.S.C. § 405(g), **IT IS HEREBY ORDERED** that the decision of the ALJ is **AFFIRMED**.

**IT IS FURTHER ORDERED** that Ms. Henning's motion for summary judgment at ECF No. 31 is **DENIED**.

**IT IS FURTHER ORDERED** that the Commissioner's motion for summary judgment at ECF No. 33 is **GRANTED**.

BY THE COURT:

_____

KIM R. GIBSON
UNITED STATES DISTRICT JUDGE